**UNITED STATES of America,**
**Appellee,**

v.

**Lamone LUCAS, Defendant–Appellant.**

No. 02–1775.

United States Court of Appeals,
Second Circuit.

July 10, 2003.

Timothy Hoover, Buffalo, NY, for Appellant.

Joel L. Violanti, Assitant United States Attorney, on behalf of Michael A. Battle, United States Attorney for the Western District of New York, Buffalo, NY, for Appellee.

PRESENT: WINTER, B.D. PARKER, Circuit Judges, and DRONEY,* District Judge.

SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL

---

* The Honorable Christopher F. Droney, United States District Court for the District of Connecticut, sitting by designation.

REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 10th day of July, two thousand and three.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Defendant–Appellant Lamone Lucas appeals from a judgment of conviction in the United States District Court for the Western District of New York (John T. Elvin, *Judge*), following his conditional plea of guilty to one count of possessing a firearm after being previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Appellant's plea preserved his right to appeal the District Court's denial of his motion to suppress a firearm recovered by the police officers on the basis that they lacked reasonable suspicion to conduct an investigatory stop. The motion was referred to Magistrate Judge Hugh B. Scott, who conducted an evidentiary hearing and recommended that the motion be denied. The District Court adopted the recommendation and denied the motion, and appellant pleaded guilty. He was sentenced to 70 months' imprisonment, three years' supervised release, and ordered to pay a $100 special assessment.

On appeal, appellant contends, as he did below, that police officers lacked reasonable suspicion to conduct an investigatory stop of him as he walked down a residential street in Buffalo, New York on the day of his arrest. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Although we review de novo the legal issues presented by a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we view those fact in the light most favorable to the government." *United States v. Casado,* 303 F.3d 440, 443 (2d Cir.2002).

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, law enforcement officers possess the limited authority "in appropriate circumstances and in an appropriate manner" to approach a person they believe might be engaged in criminal activity for the purpose of conducting an brief investigatory stop even though they lack probable cause to make an arrest. 392 U.S. at 22, 88 S.Ct. 1868. Officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. Furthermore, in connection with such a stop, officers may conduct a limited weapons search when they believe a suspect is armed "with a weapon that could unexpectedly and fatally be used against [them]." *Id.* at 23, 88 S.Ct. 1868.

At an evidentiary hearing before the magistrate judge, arresting officer Jerry Gulian of the Buffalo police department testified to the following. On the day of appellant's arrest, Gulian and his partner Pat Humiston were riding in a marked Buffalo police car in the vicinity of Woodlawn and Dupont Avenues at approximately 7 o'clock in the evening when Gulian observed appellant and another individual walking down Woodlawn towards the intersection of Dupont. From approximately sixty feet away, Gulian observed appellant "mess around with his waistband" and

observed "what appeared to be a revolver, handgun or something." (Transcript of Suppression Hearing Jan. 11, 2002, at 8.) [1] Gulian stated to Humiston, who was driving, "I think this guy has got a gun, let's check him out." (Id. at 10.) Humiston pulled the car over and the two exited the car and directed appellant and the other individual to approach the car and put their hands on the car for the purpose of conducting a pat-down. At that point, appellant fled from officers, instigating a brief foot chase by Gulian during which Gulian saw appellant throw a gun from his waist area to the ground. Appellant was subsequently apprehended and the gun recovered a short distance away.

The magistrate credited this testimony and, in light of the circumstances, found the investigatory stop to be proper, and the District Court, after reviewing the arresting officers' testimony, agreed and denied the motion. We affirm. The circumstances described by Officer Gulian are those in which a "Terry stop" is appropriate. The officer's personal observation of an object that appeared to be a gun created adequate "reasonable suspicion" to believe that appellant was unlawfully possessing a firearm, and justified conducting a limited weapons search to protect the safety of officers and others. That New York state permits certain licensed individuals to carry concealed weapons does not negate the officer's reasonable suspicion that unlawful activity was afoot, since the officers were entitled to draw on their experience that far more individuals who carry concealed handguns do not have licenses than do. *Cf. United States v. Forero-Rincon*, 626 F.2d 218, 222 (2d Cir.1980) (holding that the fact that a suspect's conduct may be as consistent with innocent activity as with nefarious activity does not

preclude that conduct from supporting reasonable suspicion).

We have considered appellant's remaining arguments and find them without merit. Accordingly, the judgment of the District Court is AFFIRMED.

---

1. On further questioning from the court, Gulian testified that he observed "a dark object, it looked kind of like the handle of a pistol." (Id. at 9.)